**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| _____ : | |
| LENFORD P. WRAY,                : | |
|                                 : | Civil Action No. 08-6042 (WJM) |
|         Petitioner,             : | |
|                                 : | |
|     v.                          : | **O P I N I O N** |
|                                 : | |
| MICHAEL B. MUKASEY, et al.,     : | |
|                                 : | |
|         Respondents.            : | |
| _____: | |

**APPEARANCES:**

    LENFORD P. WRAY, Petitioner, <u>Pro Se</u>
    # 214426
    E-5-S
    Hudson County Correctional Center
    35 Hackensack Avenue
    Kearny, New Jersey 07032

    DAVID EDWARD DAUENHEIMER, Assistant U.S. Attorney
    970 Broad Street, Suite 700
    Newark, New Jersey 07102
    Attorneys for Respondents

**MARTINI, District Judge**

    Petitioner, Lenford P. Wray ("Wray"), an immigration detainee presently confined at the Hudson County Correctional Center in Kearny, New Jersey, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, together with a motion seeking an Order to Show Cause why he should not be released from detention pending his removal from the United States. Wray names the following party respondents in this

matter: Michael B. Mukasey, United States Attorney General; Michael Chertoff, Secretary of the Department of Homeland Security ("DHS");[1] Scott Weber; Andrea J. Quarantillo, Immigration and Customs Enforcement ("ICE") District Director for the Newark, New Jersey District; and Oscar Aviles, Warden at Hudson County Correctional Center (collectively, "the Government").

The Government submitted a response with the relevant administrative record, on March 24, 2009. Wray filed a reply on or about April 22, 2009, as well as a letter reply on or about May 4, 2009. This Court has reviewed the written submissions of the parties, and for the reasons stated below, will deny the petition.[2]

## I. BACKGROUND

Wray is a native and citizen of Jamaica who entered the United States on June 27, 1989, as a non-immigrant.

---

[1] Effective March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency of the Department of Justice, and its functions were transferred to the Department of Homeland Security ("DHS"). See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002). The Bureau of Immigration and Customs Enforcement ("ICE") of the DHS is responsible for the interior investigation and enforcement functions that formerly were performed by the INS.

[2] Wray also filed a motion for appointment of counsel in this action. Because the Court is denying habeas relief as well as the motion for an Order to Show Cause, petitioner's motion for appointment of counsel will be denied as moot.

(Respondents' Exhibit A, Notice to Appear Form).  Wray's status was adjusted to lawful permanent resident on June 15, 2000.  Some years later, on September 28, 2006, Wray was convicted in the Superior Court of New Jersey, Passaic County, on charges of possession of a controlled dangerous substance, namely, marijuana, with the intent to distribute within 1000 feet of school property, in violation of N.J.S.A. §§ 2C:35-7 and 2C:35-5a.  (Resp. Ex. C, May 19, 2008 Bureau of Immigration Appeals ("BIA") decision).  Wray also had been convicted for the same offense in 2004.  (Id.)

On June 18, 2007, Wray was served with a Notice to Appear, charging him as a removable alien based on his felony drug conviction, pursuant to Section 237(a)(2)(B)(i) of the Immigration and Nationality Act ("INA").  (Resp. Ex. A).  Wray initially applied for asylum and withholding of removal but voluntarily withdrew his applications, and instead filed an application for cancellation of removal under Section 240A(a) of the INA.  On January 29, 2008, Wray's request was denied by an Immigration Judge ("IJ"), as a matter of discretion, and Wray was ordered removed.  (Resp. Ex. B, IJ Order dated January 29, 2008).

Wray appealed the IJ's decision to the Bureau of Immigration Appeals ("BIA"), and the BIA affirmed the order of removal in a decision issued on May 19, 2008.  (Resp. Ex. C).  Wray then appealed the BIA decision to the United States Court of Appeals

3

for the Third Circuit, but after the Government filed a motion to dismiss the appeal for lack of jurisdiction, Wray moved to voluntarily dismiss his appeal. The appeal was dismissed on June 26, 2008. Wray has remained in custody throughout this time pending his removal to Jamaica.

On August 14, 2008, a post-removal order custody review of Wray's custody status was completed by DHS officials. (Resp. Ex. E, ICE Decision to Continue Detention). The ICE determined that Wray should not be released from custody at that time based on a review of his case file. Specifically, the ICE decision to continue detention found:

> Review of your case indicates that you were ordered removed by the Board of Immigration Appeals on May 19, 2008. Review of your criminal history indicates three known or admitted arrests that resulted in two felony convictions for offenses that include but are not limited to: Possess Marijuana/Hash, Distribute Marijuana, CDS on School Property, Possess/Use of CDS, Manufacture/Distribute CDS, and Distribute Heroin/Cocaine. You would appear to pose a danger to the community if you were to be released from ICE custody in addition to a risk of flight.

(Resp. Ex. E, August 14, 2008 ICE Decision to Continue Detention).

Wray's custody status was reviewed again on December 18, 2008. At that time, the ICE determined that Wray should remain in detention because his removal was expected to occur in the reasonably foreseeable future. Specifically, the December 18, 2008 Decision to Continue Detention read:

> A request for a travel document was submitted on your behalf to the Consulate of Jamaica in New York, New York.  The Consulate of Jamaica has not denied issuing you a travel document and the request is still pending.

(Resp. Ex. F, December 18, 2008 ICE Decision to Continue Detention).

## II.   CLAIMS PRESENTED

Wray filed this habeas petition on or about December 12, 2008, shortly before his December 18, 2008 custody review, asserting that his continued detention was indefinite and unconstitutional because there was no likelihood of his removal in the reasonably foreseeable future.  The Government responded on March 24, 2009, alleging that the ICE has been in "continuous and consistent contact with the Jamaican consulate in an ongoing effort to secure the travel documents required to effect [Wray's] removal."  (Resp. Answer at pg. 6, see also Resp. Exs. G and H). The Government further contends that any delay in Wray's removal is due to his family's failure to provide the Jamaican consulate with sufficient proof of his citizenship necessary for the issuance of a travel document.  (Id.)  An affidavit from Jarvis McMillar, a Detention and Deportation Officer ("DDO") assigned to the Travel Document Unit ("TDO") of the HQ Detention and Removal Operations ("DRO") of the DHS's ICE headquarters in Washington, D.C., since June 2008, confirms that the U.S. regularly removes Jamaican nationals, with the successful removal of 1,442 Jamaican nationals in the fiscal year 2008.  (Resp. Ex. G, McMillar

5

Declaration at ¶¶ 1,4). Therefore, the Government argues that Wray does not satisfy the standard for conditional release, as set forth in Zadvydas v. Davis, 533 U.S. 678 (2001), and the petition should be denied accordingly.

On April 23, 2009, Wray filed a reply to the Government's response. Essentially, Wray claims that he has cooperated to every extent possible to effect his removal. He further asserts that the Government provides no real documentary support for its contention that Wray's family has impeded his removal, nor does the Government provide any record of its efforts to obtain travel documents. Wray points out that the Government's own records, namely the "HQ POCR Checklist for 241.4 Reviews" attached to the response as Exhibit H, show that there was no likelihood of issuance of travel documents in August 2008, as well as on January 30, 2009. Moreover, Wray argues that the Government is relying on the declaration of McMillar rather than submitting a declaration from Wray's deportation officer, Marcus Cistaro. It was Cistaro who prepared Checklist (Ex. H), and who spoke to both Leon Blythe of the Jamaican consulate and McMillar on January 30, 2009, and had relayed to McMillar that the consulate would not issue travel documents until petitioner's father verified Wray's citizenship/identity. Therefore, Wray argues that the Government has not provided competent documentary evidence to rebut

6

petitioner's showing that there was no likelihood of his removal in the foreseeable future.

## DISCUSSION

**A.   Jurisdiction**

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Here, this Court has subject matter jurisdiction over this petition because petitioner was detained within its jurisdiction at the time he filed his petition, and because petitioner asserts that his indefinite detention, since February 2004, is not statutorily authorized and is constitutionally impermissible pursuant to Zadvydas v. Davis, 533 U.S. 678 (2001) and Clark v. Martinez, 543 U.S. 371 (2005).

**B.   Standard of Review**

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United

States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**C.  Discussion**

Post-removal-order detention is governed by 8 U.S.C. § 1231(a).  Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within a 90-day "removal period."

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) permits continued detention if removal is not effected within 90 days.  However, the Supreme Court has held that such post-removal-order detention is subject to a temporal reasonableness standard.  Specifically, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a resident alien must be released if he can establish that his removal is not reasonably foreseeable.  See Zadvydas v. Davis, 533 U.S. 678 (2001); Clark v. Martinez, 543 U.S. 371 (2005).

The alien bears the initial burden of establishing that there is "good reason to believe that there is no significant

8

likelihood of removal in the reasonably foreseeable future," after which the government must come forward with evidence to rebut that showing.  Zadvydas, 533 U.S. at 699-701.  See also, e.g., Xi v. U.S. I.N.S., 298 F.3d 832, 839-40 (9th Cir. 2002); Kacanic v. Elwood, 2002 WL 31520362 (E.D. Pa. Nov. 8, 2002); Fahim v. Ashcroft, 227 F. Supp.2d 1359, 1367-68 (N.D. Ga. 2002); Lema v. U.S. I.N.S., 214 F. Supp.2d 1116, 1117-18 (W.D. Wash. 2002), aff'd, 341 F.3d 853 (9th Cir. 2003).

In addition, in assessing whether an alien has made the required showing, it must be remembered that, while the Supreme Court in Zadvydas emphasized that the expiration of the six-month presumptively-reasonable period of detention did not mandate release, it also stated that as the period of detention grows "what counts as the 'reasonably foreseeable future' conversely shrinks."  533 U.S. at 701.

However, "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).  Federal courts have recognized that "Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal.  The reason is self-

evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003)(cited with approval in U.S. ex rel. Kovalev v. Ashcroft, 71 Fed. Appx. 919, 924 (3d Cir. 2003).

Here, the Government contends that the only delay in effectuating Wray's removal is due to his family's failure to provide the Jamaican consulate with sufficient proof of his citizenship and identity needed for issuance of a travel document. The record provided shows that on January 30, 2009, Leon Blythe of the Jamaican consulate was waiting for petitioner's father to verify Wray's citizenship/identity. (Resp. Ex. H). Wray offers no evidence to show that his family has fully cooperated as alleged.

Consequently, Wray has not established that he is entitled to issuance of a writ. His petition simply relies on the mere passage of time as a ground for relief, essentially arguing that the Government has not made or shown any effort in removing Wray since his Order of removal was entered in May 2008. Under the circumstances presented here, there is no sufficient basis for this Court to find that Wray's removal is not likely to occur in the reasonably foreseeable future. This is so especially where the Government has shown that in the fiscal year 2008, 1,442 removals of Jamaican citizens have been successfully completed,

and that the only impediment at this time is verification of Wray's citizenship which he is obligated to provide the consulate to effectuate his removal.

Federal courts disagree as to the extent to which the passage of time can suffice to meet the alien's burden.  Compare Fahim v. Ashcroft, 227 F. Supp.2d 1359, 1365-68 (N.D.Ga. 2002) (mere passage of time insufficient to meet alien's burden of proof), with Seretse-Khama v. Ashcroft, 215 F. Supp.2d 37, 48-54 (D.D.C. 2002)(continued detention for over three years, coupled with eight-month delay since INS last contacted destination country, suffices to meet alien's burden); Lema v. U.S. I.N.S., 214 F. Supp.2d 1116, 1118 (W.D. Wash. 2002), aff'd on other grounds,341 F.3d 853 (9th Cir. 2003)(where destination country's lack of response to request for travel documents is combined with INS inability to explain silence and absence of any indication that situation may change, continued detention would be unreasonable but, where destination country's failure to respond suggests nothing more than "bureaucratic inertia," removal remains "foreseeable").  See also Kacanic v. Elwood, 2002 WL 31520362 (E.D.Pa. 2002) (passage of one year, coupled with inaction of foreign embassy and INS admission that efforts to obtain travel documents have been "fruitless," suffices to meet alien's burden); Khan v. Fasano, 194 F. Supp.2d 1134, 1136-37 (S.D.Cal. 2001)(where alien has been in post-removal order

11

custody for ten months, and meeting is scheduled with destination country to discuss request for travel documents, delay alone is not sufficient to meet alien's burden; however, alien granted leave to refile petition in six months' time if his removal has not then been effectuated); Okwilagwe v. INS, 2002 WL 356758 (N.D. Texas, March 1, 2002)(passage of eleven months without action by destination country sufficient to meet alien's burden, even where destination country orally promised travel documents "in a few days," but failed to provide them over period of two months).

    Here, the record indicates that the ICE and the Jamaican consulate have had consistent, periodic contact.  Most of the entries on the HQ POCR Checklist prepared by Deportation Officer Cistaro show that the consulate person contacted, Leon Blythe, was awaiting documentation and verification from Wray's family with respect to Wray's birth certificate, citizenship and identity.  (Resp. Ex. H).  Specifically, on September 17, 2008, it is indicated that the consulate was waiting for birth certificate or names and numbers of family.  (Id.)  On November 12, 2008, again it is indicated that the consulate was waiting for the father to obtain Wray's birth certificate and bring it to the consulate.  The last entry is dated January 30, 2009, and shows that the consulate was still waiting for Wray's father to verify Wray's citizenship and identity.  (Id.)  Thus, the record

submitted here reflects continuing communications between the consulate personnel and the Deportation Officer through January 2009, but does not reflect a decision to deny travel documents. To the contrary, the record shows that the reason for any delay in the issuance of travel documents is due to Wray's family and their failure to provide verification of his citizenship, which has been repeatedly requested.  The inability of Wray's family to provide the Jamaican consulate with verification of Wray's citizenship cannot be attributed to the ICE.  See Abimbola v. Ridge, 2005 WL 588769 *2 (D. Conn. 2005)("a self-inflicted wound cannot be grounds for a Zadvydas claim").  Accordingly, Wray has failed to meet his burden.

   As a caveat to this ruling, however, the Court notes that the dilatoriness of Wray's family in providing documentation and verification of his Jamaican citizenship may not rise to the level of actions by Wray to "prevent" his removal, but his effort does appear half-hearted at best.  Therefore, while the Court will deny this habeas petition at this time, it shall consider a renewed application for relief if, after full cooperation from Wray and his family, the Government remains unable to effectuate his removal.

## CONCLUSION

   For the reasons set forth above, the Court will deny the petition for a writ of habeas corpus under 28 U.S.C. § 2241 at

13

this time.  Petitioner's motions for injunctive relief and for appointment of counsel will be denied as moot.  An appropriate order follows.

                                                s/William J. Martini

                                          WILLIAM J. MARTINI
                                          United States District Judge

Dated: June 24, 2009